# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| CASEEXPERTS L.L.C. | * | CIVIL ACTION NO.  09-1903 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| COMPSTAR SYSTEMS, INC. ET AL | * | MAGISTRATE JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the district court, is a motion to dismiss for lack of personal jurisdiction filed by defendants CompStar Systems, Inc. ("CompStar") and Brian E. Henke ("Henke").  Doc. # 10.  For reasons stated below, it is recommended that the motion be **DENIED.**

## BACKGROUND

Plaintiff CaseExperts L.L.C. ("CaseExperts") provides nurse case management services to businesses, insurers, and other entities in Ouachita Parish and the surrounding areas in Louisiana.  Defendant CompStar is a California corporation based in Costa Mesa, California that provides data processing services to third party administrators and adjustors of workers' compensation claims.  Defendant Brian Henke was the President of CompStar at the time of the events that gave rise to this dispute.  The facts of this dispute arise out of a joint venture between CaseExperts and CompStar that involved the development and marketing of CaseDirector, a software program.

On September 28, 2009, plaintiff CaseExperts L.L.C. ("CaseExperts") filed a complaint against CompStar and Henke in Louisiana state court.  CaseExperts alleged that it approached

CompStar and Henke in 2005 "concerning the development of a computer software program to improve the services CaseExperts provided for its customers." Doc. # 1, Ex. 1 at ¶ 4. The parties agreed, through a series of phone calls and e-mails, to the following three points: (a) together they would  "market, sell and/or lease the computer software program named 'CaseDirector' with each party to bear its own expenses and gross sales revenues be attributed seventy-five (75%) percent to CompStar and/or Brian Henke and twenty-five (25%) percent to CaseExperts"; (b) CompStar would provide the maintenance and service work for CaseDirector while CaseExperts would pay CompStar a maintenance fee of $20 per seat license; and (c) CompStar would not market CaseDirector to any businesses in the areas serviced by CaseExperts. *Id.* at  ¶¶ 7-9. CaseExperts alleged that CompStar breached all three points of agreement. *Id.* at 10-12.

On November 9, 2009, defendants removed this case to federal court on the basis of diversity jurisdiction.  Docs. # 1, 13.  Defendants then filed the instant motion to dismiss for lack of personal jurisdiction on November 30, 2009.  Doc. # 10.  Plaintiff filed a responsive memorandum on January 12, 2010, and defendants filed a reply memorandum on January 20, 2010.  Docs. ## 16, 19.  The matter is now before the court.

## LAW AND ANALYSIS

### A. Substantive Law

Courts are obligated to consider personal jurisdiction before reaching the merits of a claim.  *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).  A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the

exercise of jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the Constitution. LA. REV. STAT. ANN. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process.

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) (citations omitted).

"Minimum contacts" include both those that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Freudensprung v. Offshore Technical Services, Inc.* 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. *Id.* at 344. Specific jurisdiction applies where the nonresident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's contacts with the forum. *Id*.

Accordingly, a court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state; and (3) the exercise of jurisdiction is fair and

3

reasonable.  *See Burger King v. Rudzewicz*, 471 U.S. 462, 472-74 (1985).

When a nonresident corporation purposefully directs its activities toward the forum state, "it has clear notice that it is subject to suit there."  *World Wide Volkswagen Corp. et al. v. Woodson*, 444 U.S. 286, 297 (1980).  Activities that put a corporation on notice that it is subject to suit in the forum state include closing sales, performing services, and soliciting business through salespersons in the forum state, as well as advertising that is "reasonably calculated to reach the [forum] state."  *Id.* at 295.

Furthermore, in contract actions such as this one, courts adopt a "highly realistic" approach "that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  *Burger King*, 471 U.S. at 479.  Accordingly, the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract . . . is sufficiently purposeful to satisfy minimum contacts."  *Jones*, 954 F.2d 1061, 1068 (5th Cir. 1992).  The Fifth Circuit has also recognized that "the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity."  *Id.* at 1069.

Finally, when a district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper."  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Thompson v. Chrysler Motors*

4

*Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).  Furthermore, on a motion to dismiss for lack of personal jurisdiction, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."  *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982).

### B. Discussion

Applying these principles to this case, the undersigned finds that specific jurisdiction over the defendants is proper.  The defendants have the requisite minimum contacts with Louisiana; the plaintiff's cause of arises out of these contacts; and the defendants have not proved that the exercise of jurisdiction over them in Louisiana would be unreasonable or unfair.

### (1) Minimum Contacts

Based on the record before the court, the undersigned finds that the defendants purposefully directed their activities toward Louisiana in two respects.  First, CaseExperts submitted affidavits and emails which demonstrate that the terms of the joint venture in which the parties were involved included marketing CaseDirector in Louisiana.  Scott Parker ("Parker"), the managing member of CaseExperts, averred that he met with Henke in CaseExperts' Louisiana office on November 14 and 15 of 2005 to discuss the development and marketing of CaseDirector.  Doc. # 16, Ex. 1 at ¶¶ 4, 8; *see also* Doc. # 16, Ex. 3.  On November 17, 2005, Henke sent CaseExperts employees an email discussing the "next steps in the development of the CaseDirector project," one of which included marketing CaseDirector in Louisiana.  Doc. # 16, Ex. 7.  Indeed, in this email, Henke wrote, "Before the end of the year, I will be starting an advertising campaign for the new product. . . . I think it would also be in our

5

best interest to advertise the product on [the CaseExperts website] as well.  Of course, you guys will hopefully be starting an 'idea virus' of sorts, by spreading information about the product via word of mouth."  *Id.*  Furthermore, on May 18, 2006, Henke sent CaseExperts employees an email in which he mentioned that he was under the assumption that Donna Norman ("Norman"), a CaseExperts employee stationed in Louisiana, would be the "first point of contact" for sales and that he planned to "coordinate the demos" with her.  Doc. # 16, Ex. 13.  In an affidavit, Norman averred that she "personally assisted in the marketing of the CaseDirector program on behalf of [CompStar and CaseExperts] in the State of Louisiana."  Doc. # 16, Ex. 2 at ¶ 7. Accordingly, the evidence that CaseExperts provided demonstrates that Louisiana was one state where the terms of the joint venture between CaseExperts and CompStar were anticipated to be executed and actually were executed.  *See Jones*, 954 F.2d at 1068.

Second, CaseExperts provided affidavits and emails which demonstrate that CompStar actively solicited business in Louisiana.  Parker averred that Henke "prepared and sent pamphlets to trade shows held in Louisiana" and also "marketed the Case Director system at a trade show held in Marksville, Louisiana during the summer of 2006."  Doc. # 16, Ex. 1 at ¶¶ 10-11. Moreover, on November 23, 2005, Henke emailed CompStar's employer identification number ("EIN") to a representative of Louisiana Tech University after the representative notified Henke that she needed the EIN to obtain assistance for CompStar under Louisiana's Small and Emerging Business Development program.  Doc. # 16, Ex. 8. The fact that CompStar was apparently unsuccessful in obtaining the financial assistance sought does not nullify the fact that it did seek such assistance.  Finally, on May 11, 2006, Henke emailed Advanced Medical Consulting, a company with offices exclusively in Louisiana, and quoted a price for

6

CaseDirector.  Doc. # 1, Ex. 11.

### (2) Relation between Defendants' Contacts and the Plaintiff's Cause of Action

Defendants' contacts with Louisiana involved the marketing and solicitation of CaseDirector.  Each of CaseExperts' three breach of contract claims arise out of or are related to the defendants' contacts with Louisiana.

CaseExperts' first claim alleged that defendants breached the parties' agreement to attribute 75% of gross sales revenue to CompStar and 25% to CaseExperts by refusing to provide CompStar with information relating to the marketing, sale, and lease of CaseDirector so that the parties could properly divide the gross sales revenue.  Doc. # 1, Ex. 1 at ¶¶ 7, 10.  The third claim alleged that defendants marketed CaseDirector, without CaseExperts' consent, to businesses in CaseExperts' service area, which includes Louisiana.  *Id.* at ¶¶ 9, 12.  Both of these claims clearly arise out of defendants' marketing and solicitation of CaseDirector in Louisiana.

CaseExperts' second claim alleged that defendants breached the parties' agreement that CompStar would provide maintenance and service work for CaseDirector at $20 per seat license by raising this fee to $100 per seat license.  Doc. # 1, Ex. 1 at ¶¶ 8, 11.  This claim also arises out of defendants' marketing and solicitation of CaseDirector in Louisiana because the seat licenses that form the basis of CaseExpert's claim were sold in Louisiana.

In addition, the undersigned observes that CaseExperts' claims do not arise out of the one written agreement that the parties signed - a software license agreement which includes a provision that the contract was to be "governed by and construed in accordance" with California

7

law.  *See* Doc. #10, Ex. B.  This provision would be relevant to this court's analysis if CaseExperts' claims arose out of the terms of the written agreement.  *See Jones*, 954 F.2d at 1069.  The written agreement, however, pertains to CaseExperts' use of CaseDirector with its customers, and not to what forms the basis of CaseExperts' claims - the agreement between the parties, forged over a series of telephone calls and emails, regarding the solicitation and marketing of CaseDirector to other entities.  Accordingly, CaseExperts' claims do not arise out of the written agreement and therefore the governing law provision in the written agreement is not relevant to this court's analysis.

### (3) Analysis of the Reasonableness of Jurisdiction

If a plaintiff satisfies the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unreasonable or unfair.  *Burger King*, 471 U.S. at 477.  In determining whether the exercise of personal jurisdiction is fair and reasonable, courts look to (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.  *Id.*

Defendants have failed to make any showing as to any of these factors.  Accordingly, the undersigned finds that the third prong of the specific jurisdiction analysis, like the first two prongs, also weighs in favor of a finding that the exercise of personal jurisdiction over the defendants is proper.

### CONCLUSION

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion to dismiss for lack of personal jurisdiction be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED this 28th day of January, 2010, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

9